IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

BARBARA ALLGAIER,
　　*Plaintiff*,

　　v.　　　　　　　　　　　　　　　　　　Civil No. 1:22-cv-01900-ELH

MICROBIOLOGICS, INC.,
　　*Defendant*.

**MEMORANDUM OPINION**

Plaintiff Barbara Allgaier was employed by Microbiologics, Inc. ("Microbiologics") as an "Area Sales Manager." ECF 1, ¶ 4. Her employment began in September 2010, and she was terminated on September 18, 2019. *Id*. ¶¶ 6, 30.[1] This employment discrimination suit followed on August 2, 2022. ECF 1 (the "Complaint").

The Complaint contains two counts. In particular, Count I asserts a claim of discrimination under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.* ("Title VII"), and Count II asserts a violation of the Maryland Wage Payment and Collection Law ("MWPCL"), Md. Code (2016 Repl. Vol., 2022 Supp.), §§ 3-501 *et seq.* of the Labor and Employment Article ("L.E."). Plaintiff seeks compensatory, punitive, and treble damages, as well as attorney's fees and costs. ECF 1, ¶¶ 51-54.

Microbiologics has moved to dismiss the Complaint, pursuant to Fed. R. Civ. P. 12(b)(6). ECF 5. The motion is supported by a memorandum. ECF 5-1 (collectively, the "Motion"). Plaintiff opposes the Motion (ECF 8, the "Opposition"), supported by two exhibits. ECF 8-1; ECF 8-2. In

---

[1] The Complaint is unclear as to the exact date on which plaintiff's employment began, and also unclear as to how long she served as an Area Sales Manager. ECF 1, ¶¶ 6, 7. Moreover, plaintiff does not describe the nature of defendant's business or the kind of items that she sold.

the Opposition, she complains, *inter alia*, that the Motion was untimely filed, and asks the Court to strike it on this basis. Defendant has replied, and urges the Court to strike the Opposition as untimely.  ECF 9 (the "Reply").

No hearing is necessary to resolve the Motion.  *See* Local Rule 105.6.  For the reasons that follow, I shall grant the Motion in part and deny it in part, with leave to amend.

## I. Factual and Procedural Background[2]

Plaintiff commenced employment with Microbiologics in September 2010.  ECF 1, ¶ 6. During plaintiff's tenure with Microbiologics, she was "an exemplary and high performing employee." *Id.* ¶ 8.  Throughout nine years of employment, Allgaier "never received a disciplinary reprimand or action." *Id.* ¶ 21.  Moreover, she received numerous awards and accolades, including the "'President's Award' for sales," *id.* ¶ 10; the "'Top Sales Representative Award,'" *id.* ¶ 11; and the "Molecular Business Growth Award." *Id.* ¶ 12; *see id.* ¶ 9. Further, Allgaier's "name is listed twice on the Microbiologics High Honor Plaque" at company headquarters. *Id.* ¶ 13. At the time of Allgaier's discharge, she was the only employee whose name was listed on the High Honor Plaque. *Id.* ¶ 14.

At the time of Allgaier's termination, she was working as an Area Sales Manager, and her "direct supervisor" was Alan Kaplan. *Id.* ¶¶ 7, 15. Kaplan served as Microbiologics's "vice president of sales for North America." *Id.* ¶ 16. Notably, in August 2019, Kaplan distributed a

---

[2] As discussed, *infra*, at this juncture I must assume the truth of the facts alleged in the suit. *See Fusaro v. Cogan*, 930 F.3d 241, 248 (4th Cir. 2019).

Throughout the Memorandum Opinion, the Court cites to the electronic pagination. However, the electronic pagination does not always correspond to the page number imprinted on the particular submission.

"United States Sales Force Rankings." ECF 1, ¶ 17. Allgaier was ranked as the "number one area sales manager for North America. . . ." *Id.*

In August 2019, Kaplan "sent an email to all the Sales Area Managers requesting dates for meetings in order to complete the individual's third quarterly reviews." *Id.* ¶ 22. Allgaier's review was originally scheduled for October 2, 2019. *Id.* ¶ 23. In a conference call on September 3, 2019, Allgaier asked Kaplan "why he wanted to meet with her" and Kaplan told her that "'everything will be fine.'" *Id.* ¶ 24. During the conference call, Kaplan and Allgaier agreed to meet to complete the review on September 18, 2019. *Id.* ¶ 25. Kaplan "assured" Allgaier that defendant was "not intending to cut or eliminate any positions or territories," *id.* ¶ 26, and that he "intended to visit a client with the Plaintiff." *Id.* ¶ 27.

Allgaier met with Kaplan on September 18, 2019, at a hotel in Virginia. *Id.* ¶ 28. Tonya Inselman, Microbiologics's Employee Engagement Manager, who served in the Human Resources department, was also in attendance. *Id.* ¶ 28. At the meeting, *id.* ¶ 29, Inselman informed Allgaier that she was being discharged due to "'territory elimination.'" *Id.* ¶¶ 30, 31.

At the time of Allgaier's discharge, she was defendant's "only female area sales manager." *Id.* ¶ 40. After Allgaier was terminated, Microbiologics's "U.S. Area Sales Team consisted of all males." *Id.* ¶ 42. Microbiologics had "terminated the other two female area sales managers in 2018 and 2019 respectively." *Id.* ¶ 41.

Moreover, at that time, "there were open sales and marketing positions outside of Plaintiff's territory under Mr. Kaplan's supervisory authority." *Id.* ¶ 32. But, Allgaier was not offered "the opportunity" to be considered for any "position within the company." *Id.* ¶ 33.

After plaintiff's discharge, Microbiologics continued to do business with entities within Allgaier's former territory. *Id.* ¶ 35. According to plaintiff, her "district was not eliminated but

redistributed." ECF 1, ¶ 34.  Specifically, plaintiff asserts that her clients and her district were "redistributed" to Mike Anderson and Joe Iacono, two of Allgier's male counterparts. *Id.* ¶ 36.

Anderson had been hired in March 2017 "to take over parts of Plaintiff's New England territory that Plaintiff had grown too large to manage single handedly." *Id.* ¶ 37. Plaintiff asserts that Anderson was ranked "the lowest among sales managers" in the August 2019 employee ranking. *Id.* ¶ 38. Further, plaintiff claims that Iacono was also ranked lower than Allgaier in that same ranking. *Id.* ¶ 39.

As of the time of plaintiff's discharge, she had "booked approximately one-hundred-thousand dollars" in sales.  *Id.* ¶ 18.  The products were shipped after Allgaier's departure. *Id.* ¶ 19. Allgaier alleges that she is "entitled" to commissions on these sales.  *Id.* ¶ 20.  But, she complains that Microbiologics has failed to pay the commissions. *Id.* ¶ 43.

## II.  Standards of Review

A defendant may test the legal sufficiency of a complaint by way of a motion to dismiss under Fed. R. Civ. P. 12(b)(6).  *Nadendla v. WakeMed*, 24 F.4th 299, 304-05 (4th Cir. 2022); *ACA Fin. Guar. Corp. v. City of Buena Vista*, 917 F.3d 206, 211 (4th Cir. 2019); *Paradise Wire & Cable Defined Benefit Pension Plan v. Weil*, 918 F.3d 312, 317 (4th Cir. 2019); *In re Birmingham*, 846 F.3d 88, 92 (4th Cir. 2017); *Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 165-66 (4th Cir. 2016); *McBurney v. Cuccinelli*, 616 F.3d 393, 408 (4th Cir. 2010), *aff'd sub nom. McBurney v. Young*, 569 U.S. 221 (2013); *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999).  A Rule 12(b)(6) motion constitutes an assertion by a defendant that, even if the facts alleged by a plaintiff are true, the complaint fails as a matter of law "to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).

Whether a complaint states a claim for relief is assessed by reference to the pleading requirements of Fed. R. Civ. P. 8(a)(2). That rule provides that a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." The purpose of the rule is to provide the defendants with "fair notice" of the claims and the "grounds" for entitlement to relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007).

To survive a motion under Rule 12(b)(6), a complaint must contain facts sufficient to "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570; *see Ashcroft v. Iqbal*, 556 U.S. 662, 684 (2009) ("Our decision in *Twombly* expounded the pleading standard for 'all civil actions' . . . ." (citation omitted)); *see also Nadendla*, 24 F.4th at 304-05; *Paradise Wire & Cable*, 918 F.3d at 317; *Willner v. Dimon*, 849 F.3d 93, 112 (4th Cir. 2017). To be sure, a plaintiff need not include "detailed factual allegations" in order to satisfy Rule 8(a)(2). *Twombly*, 550 U.S. at 555. Moreover, federal pleading rules "do not countenance dismissal of a complaint for imperfect statement of the legal theory supporting the claim asserted." *Johnson v. City of Shelby, Miss.*, 574 U.S. 10, 10 (2014) (per curiam). But, mere "'naked assertions' of wrongdoing" are generally insufficient to state a claim for relief. *Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009) (citation omitted).

In other words, the rule demands more than bald accusations or mere speculation. *Twombly*, 550 U.S. at 555; *see Painter's Mill Grille, LLC v. Brown*, 716 F.3d 342, 350 (4th Cir. 2013). If a complaint provides no more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action," it is insufficient. *Twombly*, 550 U.S. at 555. "[A]n unadorned, the-defendant-unlawfully-harmed-me accusation" does not state a plausible claim of relief. *Iqbal*, 556 U.S. at 678. Rather, to satisfy the minimal requirements of Rule 8(a)(2), the complaint must set forth "enough factual matter (taken as true) to suggest" a cognizable cause of

action, "even if . . . [the] actual proof of those facts is improbable and . . . recovery is very remote and unlikely." *Twombly*, 550 U.S. at 556 (internal quotation marks omitted).

In reviewing a Rule 12(b)(6) motion, "a court 'must accept as true all of the factual allegations contained in the complaint,' and must 'draw all reasonable inferences [from those facts] in favor of the plaintiff.'" *Retfalvi v. United States*, 930 F.3d 600, 605 (4th Cir. 2019) (alteration in *Retfalvi*) (quoting *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011)); *see Semenova v. Md. Transit Admin.*, 845 F.3d 564, 567 (4th Cir. 2017); *Houck v. Substitute Tr. Servs., Inc.*, 791 F.3d 473, 484 (4th Cir. 2015). However, "a court is not required to accept legal conclusions drawn from the facts." *Retfalvi*, 930 F.3d at 605 (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)); *see Glassman v. Arlington Cty.*, 628 F.3d 140, 146 (4th Cir. 2010). "A court decides whether [the pleading] standard is met by separating the legal conclusions from the factual allegations, assuming the truth of only the factual allegations, and then determining whether those allegations allow the court to reasonably infer" that the plaintiff is entitled to the legal remedy sought. *A Society Without a Name v. Virginia*, 655 F.3d 342, 346 (4th. Cir. 2011), *cert. denied*, 566 U.S. 937 (2012).

It is well settled that a plaintiff may not cure a defect in a complaint or otherwise amend a complaint by way of her opposition briefing. *See, e.g., De Simone v. VSL Pharmaceuticals*, 36 F.4th 518, 531 (4th Cir. 2022) (recognizing that, generally, new arguments cannot be raised in a reply brief); *Henderson v. City of Roanoke*, 2022 WL 704351, at *3 (4th Cir. Mar. 9, 2022) (per curiam) ("[N]o litigant is exempt from the well-established rule 'that parties cannot amend their complaints through briefing or oral advocacy.'") (quoting *So. Walk at Broadlands Homeowner's Ass'n, Inc. v. OpenBand at Broadlands, LLC*, 713 F.3d 175, 184 (4th Cir. 2013)); *Glenn v. Wells Fargo Bank, N.A.*, DKC-15-3058, 2016 WL 3570274, at *3 (D. Md. July 1, 2016) (declining to

consider declaration attached to brief opposing motion to dismiss because, among other things, it included allegations not alleged in the suit); *Zachair Ltd. v. Driggs*, 965 F. Supp. 741, 748 n. 4 (D. Md. 1997) (stating that a plaintiff "is bound by the allegations contained in its complaint and cannot, through the use of motion briefs, amend the complaint"), *aff'd*, 141 F.3d 1162 (4th Cir. 1998); *Mylan Labs., Inc. v. Akzo N.V.*, 770 F. Supp. 1053, 1068 (1991) ("'[I]t is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss'") (quoting *Car Carriers, Inc.*, 745 F.2d 1101 at 1107).

Moreover, at the Rule 12(b)(6) stage, courts ordinarily do not "'resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses.'" *King v. Rubenstein*, 825 F.3d 206, 214 (4th Cir. 2016) (quoting *Edwards*, 178 F.3d at 243). But, "in the relatively rare circumstances where facts sufficient to rule on an affirmative defense are alleged in the complaint, the defense may be reached by a motion to dismiss filed under Rule 12(b)(6)." *Goodman v. Praxair, Inc.*, 494 F.3d 458, 464 (4th Cir. 2007) (en banc); ac*cord Pressley v. Tupperware Long Term Disability Plan*, 553 F.3d 334, 336 (4th Cir. 2009). Because Rule 12(b)(6) "is intended [only] to test the legal adequacy of the complaint," *Richmond, Fredericksburg & Potomac R.R. Co. v. Forst*, 4 F.3d 244, 250 (4th Cir. 1993), "[t]his principle only applies . . . if all facts necessary to the affirmative defense 'clearly appear[ ] *on the face of the complaint*.'" *Goodman*, 494 F.3d at 464 (emphasis in *Goodman*) (quoting *Forst*, 4 F.3d at 250).

"Generally, when a defendant moves to dismiss a complaint under Rule 12(b)(6), courts are limited to considering the sufficiency of allegations set forth in the complaint as well as the 'documents attached or incorporated into the complaint.'" *Zak v. Chelsea Therapeutics Int'l, Ltd.*, 780 F.3d 597, 606 (4th Cir. 2015) (quoting *E.I. du Pont de Nemours & Co.*, 637 F.3d at 448). *See Goines*, 822 F.3d at 166 (a court may properly consider documents that are "explicitly incorporated

into the complaint by reference and those attached to the complaint as exhibits."); *see also Six v. Generations Fed. Credit Union*, 891 F.3d 508, 512 (4th Cir. 2018); A*nand v. Ocwen Loan Servicing, LLC*, 754 F.3d 195, 198 (4th Cir. 2014); *U.S. ex rel. Oberg v. Pa. Higher Educ. Assistance Agency*, 745 F.3d 131, 136 (4th Cir. 2014); *Am. Chiropractic Ass'n v. Trigon Healthcare, Inc.*, 367 F.3d 212, 234 (4th Cir. 2004), *cert. denied*, 543 U.S. 979, 125 S.Ct. 479, 160 L.Ed.2d 356 (2004); *Phillips v. LCI Int'l Inc.*, 190 F.3d 609, 618 (4th Cir. 1999). The court "may not consider any documents that are outside of the complaint, or not expressly incorporated therein[.]" *Clatterbuck v. City of Charlottesville*, 708 F.3d 549, 557 (4th Cir. 2013), *abrogated on other grounds by Reed. v. Town of Gilbert*, 576 U.S. 155 (2015); *see Bosiger v. U.S. Airways*, 510 F.3d 442, 450 (4th Cir. 2007).

However, "before treating the contents of an attached or incorporated document as true, the district court should consider the nature of the document and why the plaintiff attached it." *Goines*, 822 F.3d at 167. Of import here, "[w]hen the plaintiff attaches or incorporates a document upon which his claim is based, or when the complaint otherwise shows that the plaintiff has adopted the contents of the document, crediting the document over conflicting allegations in the complaint is proper." *Goines*, 822 F.3d at 167. Conversely, "where the plaintiff attaches or incorporates a document for purposes other than the truthfulness of the document, it is inappropriate to treat the contents of that document as true." *Id*.

Under limited circumstances, when resolving a Rule 12(b)(6) motion, a court may consider documents beyond the complaint without converting the motion to dismiss to one for summary judgment. *Goldfarb v. Mayor & City Council of Balt.*, 791 F.3d 500, 508 (4th Cir. 2015). In particular, a court may "consider a document submitted by the movant that [is] not attached to or expressly incorporated in a complaint, so long as the document was integral to the complaint and

there is no dispute about the document's authenticity." *Goines*, 822 F.3d at 166 (citations omitted); *see also Fusaro v. Cogan*, 930 F.3d 241, 248 (4th Cir. 2019); *Woods*, 855 F.3d at 642; *Kensington Volunteer Fire Dep't v. Montgomery Cty.*, 684 F.3d 462, 467 (4th Cir. 2012). For a document to be integral, a "plaintiff's claims must turn on, or otherwise be based on, the contents of the document." *Brentzel v. Fairfax Transfer and Storage, Inc.*, 2021 WL 6138286, at *2 (4th. Cir. Dec. 29, 2021) (per curiam) (citing *Goines*, 822 F.3d at 166). Further, to be "integral," a document must be one "that by its 'very existence, and *not the mere information it contains*, gives rise to the legal rights asserted.'" C*hesapeake Bay Found., Inc. v. Severstal Sparrows Point, LLC*, 794 F. Supp. 2d 602, 611 (D. Md. 2011) (emphasis in original) (citation omitted); Fed. R. Civ. P. 10(c) ("A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes.").

In addition, "a court may properly take judicial notice of 'matters of public record' and other information that, under Federal Rule of Evidence 201, constitute 'adjudicative facts.'" *Goldfarb*, 791 F.3d at 508; *see also Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007); *Katyle v. Penn Nat'l Gaming, Inc.*, 637 F.3d 462, 466 (4th Cir. 2011), *cert. denied*, 565 U.S. 825 (2011); *Philips v. Pitt Cty. Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009). However, under Fed. R. Evid. 201, a court may take judicial notice of adjudicative facts only if they are "not subject to reasonable dispute," in that they are "(1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned."

### III. Discussion

### A. Plaintiff's Request to Strike

### 1.

The Motion was filed on October 3, 2022.  In the Opposition, plaintiff contends that defendant filed the Motion "more than 40 days after their [sic] attorney was served and accepted service in this matter on August 5, 2022." ECF 8 at 16. Plaintiff supports her contention by noting that service was effectuated when defense counsel's "case assistant," James Currie, accepted delivery of the documents. *Id.* (citing ECF 3 at 1).  Therefore, plaintiff asks this court to strike the Motion as untimely, as it was not filed within 21 days of acceptance of service. ECF 8 at 17; *see* Fed. R. Civ. P. 12(a)(1)(A).

In the Reply, defense counsel contends that service was improper on August 5, 2022, because he was not authorized to accept service on Microbiologics's behalf. ECF 9 at 5.  Moreover, in an email of August 26, 2022 (ECF 8-1 at 2), defense counsel informed plaintiff's counsel, as follows:  "Dropping off the complaint at my office is not valid service . . . ."

Fed. R. Civ. P. 4(d), titled "Waiving Service," provides, in part, that the "plaintiff may notify [a corporate] defendant that an action has been commenced and *request* that the defendant waive service of a summons . . . ." (Emphasis added).  Moreover, a defendant is permitted at least 30 days to return the waiver.  Fed. R. Civ. P. 4(d)(1)(F).  And, a defendant who timely returns a waiver need not answer until 60 days after the request for waiver was sent.  Fed. R. Civ. P. 4(d)(3).  There is no indication that plaintiff complied with Fed. R. Civ. P. 4.

"Service of process is not effected merely by serving the defendant's current or former attorney*." Copeland v. Ecolab, Inc.*, WDQ–10–1158, 2011 WL 1837886, at *3 n. 12 (D. Md. May 12, 2011).  Indeed, "authority to accept service is a step beyond an implied attorney-client

relationship." *EEOC v. Phase 2 Investments Inc.*,  JKB-17-2463, 2018 WL 826526, at *5 n. 3 (D. Md. Feb. 12, 2018).

Apparently, defense counsel represented the defendant at "the administrative stage," and plaintiff's counsel appears to have assumed that counsel was authorized to accept service.  That is not a matter that can be assumed.  Plaintiff does not show that the proper procedure was followed, or that defense counsel was authorized to receive service of process, or that he had agreed to do so. Further, the record does not indicate that defense counsel's "authority to accept service [was] implied in fact." *Davies v. Jobs & Adverts Online, GmbH*, 94 F.Supp.2d 719, 722 (E.D. Va. 2000); *see also Royaltystat, LLC v. IntangibleSpring Corp.*, PX-15-3940, 2017 WL 219372, at *5 (D. Md. Jan. 19, 2017).

Rather, the docket reflects that Microbiologics was served on September 12, 2022. ECF 4. Under Rule 12 (a)(1)(A), a responsive pleading must be filed within twenty-one days after service of the Complaint.  It follows that the Motion was timely filed on October 3, 2022.  Therefore, I shall deny plaintiff's frivolous request to strike the Motion as untimely.

## 2. Defendant's Request to Strike

In the Reply, defendant urges the Court to strike the Opposition because it was filed two days after the deadline.  In particular, defendant asserts that the Opposition was filed sixteen days after service of the Motion, in violation of Rule 105.2(a) of the Local Rules ("L.R."). ECF 9 at 2-3. L.R. 105.2(a) states, in part, that "all memoranda in opposition to a motion shall be filed within fourteen (14) days of the service of the motion. . . ."

Defendant does not claim that it suffered any prejudice as a result of the two-day delay. *See Homes v. Westfield America, Inc.,* DKC-17-2294, 2018 WL 638287, at *2 (D. Md. Jan. 31, 2018) (allowing late-filed opposition when the delay was "only" one week and the defendant did

not allege that it was prejudiced); *see also Alston v. Chevrolet,* PX-15-3740, 2016 WL 4945010, at *1 (D. Md. Sep. 15, 2016) (allowing late-filed opposition as the defendant "suffered no prejudice from [plaintiff's] day-late filing"); *Saunders v. Keenan*, JKB-15-1265, 2015 WL 4622492, at *1 (D. Md. July 31, 2015) (stating that "the response was late and the Plaintiff did not seek permission to file out of time. Nonetheless, the Court has considered the response.").

Accordingly, I shall deny defendant's request to strike the Opposition.

### B.  Sex Discrimination—Title VII (Count I)

#### 1.   Title VII Generally

Title VII prohibits an employer, *inter alia*, from discriminating against "any individual with respect to [her] compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e–2. And, "terms, conditions or privileges of employment" is "an expansive concept." *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 66 (1986) (quotation marks and citation omitted).  This proscription is "often referred to as the 'disparate treatment' (or 'intentional discrimination') provision . . . ." *EEOC v. Abercrombie & Fitch Stores, Inc.*, 575 U.S. 768, 771 (2015). The Supreme Court has referred to discrimination based on one of the five characteristics specified above as "status-based discrimination." *Univ. of Texas Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 351, (2013).

Before filing suit under Title VII, a plaintiff must exhaust administrative remedies. *See Patterson v. McLean Credit Union*, 491 U.S. 164, 109 (1989), superseded on other grounds by 42 U.S.C. § 1981(b); *see also Cowgill v. First Data Technologies, Inc.*, 41 F.4th 370, 383-384 (4th Cir. 2022); *McCray v. Md. Dep't of Trans.*, 662 F. App'x 221, 224 (4th Cir. 2016); *Bryant v. Bell Atlantic, Maryland, Inc.*, 288 F.3d 124, 132 (4th Cir. 2002). To do so, a plaintiff must file a "charge" of discrimination with the EEOC or an appropriate state or local agency within 180 days

of "the alleged unlawful employment practice occurred." 42 U.S.C. § 2000e–5(e)(1); *Williams v. Giant Food Inc.*, 370 F.3d 423, 428 (4th Cir. 2004). This period is extended to 300 days in a deferral state, such as Maryland. *See Garnes v. Maryland*, RDB-17-1430, 2018 WL 276425, at *4, n.8 (D. Md. Jan. 3, 2018*); Valderrama v. Honeywell Tech. Sols., Inc.*, 473 F. Supp. 2d 658, 662 n.4 (D. Md. 2007), *aff'd*, 267 F. App'x 256 (4th Cir. 2008).

Moreover, "a complainant is entitled to a 'right-to-sue' notice 180 days after the charge is filed." *Fort Bend Cty. v. Davis*, ___ U.S. ___, 139 S. Ct 1843, 1847 (2019) (citing § 20003-5(f)(1); 29 CFR § 1601.28.) "And within 90 days following such notice, the complainant may commence a civil action against the allegedly offending employer." *Fort Bend Cty*. 139 S. Ct. at 1847 (citing § 2000e-5(f)(1)).

Nevertheless, exhaustion under Title VII is not jurisdictional. It is, instead, a "claim-processing rule [ ] that must be timely raised to come into play." *Davis*, 139 S. Ct. at 1846, 1850. Although a defendant may waive arguments related to administrative exhaustion, if asserted in a timely fashion such objections may warrant dismissal under Rule 12(b)(6). *See Kenion v. Skanska USA Bldg., Inc.*, RBD-18-3344, 2019 WL 4393296, at *4 (D. Md. Sept. 13, 2019) (discussing *Davis*).

With regard to a discrimination claim under Title VII, a plaintiff is not required to plead a prima facie case of discrimination to survive a Rule 12(b)(6) motion. *McCleary-Evans v. Md. Dep't of Transportation*, 780 F.3d 582, 584-85 (4th Cir. 2015), *cert. denied*, 557 U.S. 1138 (2016); *see Felder v. MGM National Harbor, LLC*, 2022 WL 2871905, at *1 (4th Cir. July 21, 2022) (per curiam). "Instead, a plaintiff must allege sufficient facts 'to satisfy the elements of a cause of action created by [the applicable] statute.'" *Felder*, 2022 WL 2871905, at * 1 (quoting *McCleary-Evans*, 780 F.3d at 585) (alteration in *Felder*). Therefore, to survive a motion to dismiss, a plaintiff must

"plausibly allege" discriminatory conduct because of her protected status, such as race or sex. *Felder*, 2022 WL 2871905, at *1; *see* 42 U.S.C. § 2000e-2(a)(1).

In *Swierkiewicz v. Sorema*, 534 U.S. 506, 510 (2002), the Supreme Court explained that the prima facie case, as addressed in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 793 (1973), "is an evidentiary standard, not a pleading requirement." Further, the Court stated that it had "never indicated that the requirements for establishing a prima facie case under *McDonnell Douglas* also apply to the pleading standard that plaintiffs must satisfy in order to survive a motion to dismiss." *Swierkiewicz*, 534 U.S. at 511. Therefore, "an employment discrimination plaintiff need not plead a prima facie case of discrimination . . . ." *Id.* at 515; *see also Laurent-Workman v. Wormuth,* 54 F.4th 201, 210 (4th Cir. 2022); *Bing,* 959 F.3d at 616; *McCleary-Evans*, 780 F.3d at 584.

However, as the Second Circuit has observed, the Supreme Court's holding in Swierkiewicz is arguably in tension with the Court's subsequent rulings in *Iqbal*, 556 U.S. 662, and *Twombly*, 550 U.S. 544. *See Littlejohn v. Cty. of New York*, 795 F.3d 297, 307 (2d Cir. 2015). On the one hand, "[r]eading *Swierkiewicz* on its face, it appears to have meant that a Title VII plaintiff is not required to plead facts supporting even a minimal inference of discriminatory intent." *Id.* at 309. On the other hand, in *Twombly* the Court said that a plaintiff must "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. And, in *Iqbal*, the Court clarified that the heightened pleading standard of *Twombly* is applicable in "'all civil actions' . . . ." *Iqbal*, 556 U.S. at 684

In *Woods v. City of Greensboro*, 855 F.3d 639, 648 (4th Cir. 2017), *cert. denied*, ___ U.S. ___, 138 S. Ct. 558 (2017), the Fourth Circuit indicated that although a plaintiff "need not plead facts sufficient to establish a prima facie case of race-based discrimination to survive a motion to

dismiss," the "pleading standard established in *Iqbal* and *Twombly* applies[.]" *See Swaso v. Onslow Cty. Bd. of Educ.*, 698 F. App'x 745, 747-48 (4th Cir. 2017) ("While a plaintiff need not plead a prima facie case to survive a motion to dismiss, a Title VII complaint is still subject to dismissal if it does not meet the ordinary pleadings standard under *Twombly* and *Iqbal*.") (internal citations omitted); *see Holloway v. Maryland*, 32 F.4th 293, 298-99 (4th Cir. 2022); *McCleary*, 780 F.3d at 584; *Coleman v. Md. Court of Appeals*, 626 F.3d 187, 190 (4th Cir. 2010), *aff'd*, 566 U.S. 30 (2012).

At the motion to dismiss stage, the question "is whether [the plaintiff] alleges facts that plausibly state a violation of Title VII 'above a speculative level.'" *Bing v. Brivo Sys.*, LLC, 959 F.3d 605, 617 (4th Cir. 2020) (quoting *Coleman*, 626 F.3d at 190). Although a plaintiff need not plead a prima facie case at this stage, reference to the elements of a claim is helpful to assess whether the plaintiff has stated a plausible claim. *See Bass v. E.I. DuPont de Nemours & Co.*, 324 F.3d 761, 765 (4th Cir. 2003); *Young v. Giant Food Stores, LLC*, 108 F. Supp. 3d 301, 314 (2015); *see also Cloud v. Brennan*, 436 F. Supp. 3d 1290, 1300-01 (N.D. Cal. 2020) ("When a plaintiff does not plead a prima facie case, courts still look to the elements of the prima facie case 'to decide, in light of judicial experience and common sense, whether the challenged complaint contains sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face.'") (citation omitted). However, the Fourth Circuit has "cautioned that 'a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable' . . . ." *Felder*, 2022 WL 2871905, at *1 (quoting *Woods*, 855 F.3d at 652).

To state a discrimination claim under Title VII, the plaintiff generally must allege "'(1) membership in a protected class; (2) satisfactory job performance; (3) adverse employment action; and (4) different treatment from similarly situated employees outside the protected class.'" *Goode*

*v. Cent. Va. Legal Aid Soc., Inc.*, 807 F.3d 619, 626 (4th Cir. 2015) (quoting *Coleman*, 626 F.3d at 190); s*ee Matias v. Elon Univ.*, 780 F. App'x 28, 31 (4th Cir. 2019) (per curiam); *Rayyan v. Va. Dep't of Transp.*, 719 F. App'x 198, 203 (4th Cir. 2018); *Bonds v. Leavitt*, 629 F.3d 369, 386 (4th Cir. 2012) (internal quotations omitted).

In the context of a claim rooted in a reduction in force ("RIF"), the elements of the prima facie case are modified. *See Corti v. Storage Tech. Corp.*, 304 F.3d 336, 340 n. 6 (4th Cir. 2002). A plaintiff must allege: "1) [plaintiff] was protected under Title VII, 2) she was selected from a larger group of candidates, 3) she was performing at a level substantially equivalent to the lowest level of that in the group retained, and 4) the process of selection produced a residual work force that contained some unprotected persons who were performing at a level lower than that at which the plaintiff was performing." *Id.* The last element may be satisfied by showing "some other evidence indicating that the employer did not treat [the protected class] neutrally" when reducing the force. *Herold v. Hajoca Corp.*, 864 F.2d 317, 319 (4th Cir. 1988).

To establish a prima facie case for discriminatory failure to hire, a plaintiff must show that: (1) she belonged to a protected class; (2) she applied for, and was qualified for, a job for which the employer was seeking applicants; (3) she was rejected despite her qualifications; and (4) after her rejection, the position remained open and the employer continued to seek similarly-qualified applicants, or filled the position with an applicant outside the protected class. *See EEOC v. Sears Roebuck & Co.*, 243 F.3d 846, 851 (4th Cir. 2001).

### 2.   Discussion

Plaintiff alleges that Microbiologics discriminated against her because she was terminated on September 18, 2019, based solely on her sex. ECF 1, ¶ 44.  According to plaintiff, she was the only female U.S. area sales manager at the time, *id.* ¶ 47, and defendant "redistributed her territory

to lower performing" men.  ECF 1, ¶ 46. She maintains that defendant's conduct was consistent with its "habit" of terminating female area sales managers. *Id.* ¶ 44.  Further, she asserts that the employer "failed to offer her an alternate, available position." *Id.* ¶ 45.

Microbiologics does not dispute that plaintiff falls within a protected class under Title VII. And, in the RIF context, defendant does not appear to dispute that plaintiff was selected from a larger group of candidates. Instead, in the RIF context, Microbiologics takes aim at the third and fourth elements of a prima facie claim for discriminatory termination. ECF 5-1 at 4-5.

Defendant maintains that although plaintiff alleges facts that show that "in past years she was meeting her employers [sic] expectations – even that she was a top performer," she has not alleged that "she was performing to Microbiologics' expectations *at the time* of her termination." ECF 5-1 at 6.  (Italics in original).  Further, defendant argues that plaintiff fails to allege "sufficient facts" to demonstrate that her "inclusion in the [RIF] was anything other than a legitimate business decision . . . ."  *Id.* at 6-7.  Defendant also argues that Allgaier's "reference to open positions that were not 'offered' to her . . . is inconsequential because there are no allegations she applied to any open position.." ECF *Id.* at 7 n. 3.

Plaintiff counters that defendant misapprehends the applicable standard at this stage of the case.  ECF 8 at 7-9.

**a.**

As indicated, defendant argues that plaintiff fails adequately to plead a discrimination claim "in the reduction-in-force dismissal context."  ECF 5-1 at 4.

In *O'Connor v. Consolidated Coin Caterers Corp.*, 56 F.3d 542, 546 (4th Cir. 1995), *reversed on other grounds*, 517 U.S. 308 (1996), the Fourth Circuit rejected the applicability of a

RIF suit in an age discrimination case. There, the reduced "force" consisted only of two people, and the plaintiff was replaced by a fellow employee. The Fourth Circuit said, 56 F.3d at 546:

> [T]he complexities and difficulties of determining what employee was replaced by whom in the typical mass layoff case is simply not an issue here. *See* [*EEOC v.*] *Clay Printing Co.*, 955 F.2d 936, 937 (4th Cir.1992) (twenty-three employees laid off); [*EEOC v.*] *Western Elec. Co.*, 713 F.2d 1011, 1013 (4th Cir.1983) (reduction-in-force test applied to work force of 225 employees). Also, unlike the typical reduction-in-force case, O'Connor can point to his replacement. *See Duke v. Uniroyal, Inc.*, 928 F.2d 1413, 1418 (4th Cir.) (explaining that in reduction-in-force suits determining the employee that replaced the plaintiff may prove difficult, often because jobs have been eliminated or combined), *cert. denied*, 502 U.S. 963 (1991). We are not persuaded, therefore, that this case is properly characterized as a reduction-in-force suit. Thus, application of the reduction-in-force paradigm is inapt here.

*See also Larry v. Marion County Coal Co.*, 302 F. Supp. 3d 763, 770 (N.D. W. Va. 2018) (concluding that the "modified RIF test" was inappropriate in a discrimination discharge claim where the terminated individual was selected from a group of four employees); *Vincent v. MedStar Southern Maryland Hospital Center*, TDC-16-1438, 2017 WL 3668756, at *6 (D. Md. Aug. 22, 2017) (concluding that the RIF "test" was appropriate where plaintiff's position was one of 23 that was eliminated, and plaintiff's job performance was not at issue).

As in *O'Connor*, the reduced force here consists only of Allgaier, and her two replacements are former co-workers.   Therefore, the Court is not persuaded that this case is properly characterized as one involving a reduction-in-force, or that the elements of the modified RIF standard are applicable.

### b.

As indicated, the plaintiff in a Title VII case ordinarily must allege that:  "(1) she is a member of a protected class; (2) she suffered adverse employment action; (3) she was performing her job duties at a level that met her employer's legitimate expectations at the time of the adverse

employment action; and (4) the position remained open or was filled by similarly qualified applicants outside the protected class." *Bonds*, 629 F.3d at 386.

Allgaier is clearly a member of a protected class, and she suffered an adverse employment action because she was discharged. But, Microbiologics argues that Allgaier has not satisfied the third element, which requires her "'to plead that she was meeting her employer's *expectations at the time of the adverse employment action*.'" ECF 5-1 at 5 (quoting *Young,* 108 F. Supp. 3d at 313) (emphasis in *Young*)). In particular, Microbiologics claims that the facts as alleged only concern plaintiff's past performance, rather than her performance at the time of discharge. ECF 5-1 at 5.

The argument is specious. In construing the allegations, the court assumes the truth of the facts alleged as well as all reasonable inferences. *Retfalvi*, 930 F.3d at 605. Plaintiff was terminated on September 18, 2019. ECF 1, ¶ 30. But, Microbiologics had scheduled the meeting for the termination on September 3, 2019. *Id.* ¶ 25. And, just days earlier, in August 2019, plaintiff "was the number one area sales manager for North America." *Id.* ¶ 17. Clearly, this is sufficient to satisfy the requirement that plaintiff allege she was meeting performance standards at the time of discharge. *See, e.g., Jordan v. Radiology Imaging Assocs.,* 577 F.Supp.2d 771, 775, 783 (D. Md. 2008) (concluding, on summary judgment, that plaintiff, who was terminated in December 2005, provided sufficient evidence to show employer was satisfied with her job performance, in part, because of her uniformly positive performance reviews from 2003 and 2004).

In *Young,* 108 F. Supp. 3d at 313, a case on which defendant relies, the plaintiff alleged that she "performed adequately over a seven year period prior" to her termination. But, she did not expressly plead that, at the time of discharge, she met her employer's reasonable expectations. *Id.* Nevertheless, she argued that "the mere fact that she remained employed by [the defendant] for over seven years provides an inference that she was meeting her employer's reasonable

expectations." *Id.* The court disagreed, stating that plaintiff did not plead facts to show she was meeting her employer's legitimate expectations. *Id.*

The facts here are entirely distinguishable, however. Plaintiff has alleged far more than years of employment with the defendant and a past or stale history of achievement. ECF 1, ¶¶ 9-14. Allgaier's termination occurred on the heels of a positive performance ranking. *Id.* ¶¶ 17, 30. And, plaintiff alleges that she was never disciplined by her employer, in contrast to the facts of *Young*. *Id.* ¶ 21. Thus, she has amply alleged that her performance was consistent with her employer's expectations. *See USA Eng. Language Ctr. v. Accrediting Council for Continuing Educ. & Training, Inc.*, 2021 WL 3162671, at *2 (4th Cir. July 27, 2021) (per curiam).

Microbiologics also argues that Allgaier has not pleaded facts to support the fourth element of a prima facie discriminatory discharge claim, as "she was not actually replaced." ECF 5-1 at 7. Instead, asserts defendant, plaintiff's "former territory was divided amongst two other Microbiologics employees. . . ." *Id.* However, evidence of a "functionally equivalent" position remaining after a reorganization could satisfy the fourth element of the prima facie case for discrimination if the new position "involved the same managerial and oversight responsibilities" as the original position. *Burgess v. Bowen,* 466 F. App'x. 272 (4th Cir. 2012).

Allgaier has alleged that her duties were assumed by two male employees, Iacono and Anderson, both of whom, like Allgaier, were area sales managers. ECF 1, ¶¶ 17, 36, 38, 39. Thus, they were "similarly situated employees outside of the plaintiff's protected class [and] were treated more favorably." *Saphilom v. Nationwide Mutual Ins. Co.*, JKB-18-1180, 2020 WL 1638415, at *9 (D. Md. Apr. 2, 2020) (internal quotation and citation omitted). Therefore, "an inference of discrimination based on gender can be made . . . ." *Bartz v. Agway, Inc.*, 844 F.Supp. 106, 111-12 (S.D.N.Y. 1994).

Further, "the requirement of a similarly situated comparator is not a necessary element of the plaintiff's claim if the plaintiff can introduce other direct or circumstantial evidence of discrimination." *Rosinbum v. Azar*, TDC-19-3119, 2020 WL 6545853, at *9 (D. Md. Nov. 6, 2020). Plaintiff has alleged that Microbiologics has historically discharged female area sales managers. ECF 1, ¶¶ 40, 41, 44.

Even assuming, *arguendo*, that the modified RIF standard is appropriately applied at this stage, Microbiologics's Motion still fails. As stated earlier, in the context of a RIF, the elements are: "1) [plaintiff] was protected under Title VII, 2) she was selected from a larger group of candidates, 3) she was performing at a level substantially equivalent to the lowest level of that in the group retained, and 4) the process of selection produced a residual work force that contained some unprotected persons who were performing at a level lower than that at which the plaintiff was performing." *Corti*, 304 F.3d at 340 n. 6.

Again, Microbiologics does not dispute that plaintiff was protected under Title VII or that she was selected from a larger group of candidates.  The third element requires that the employer terminated the plaintiff even when she was performing at a level substantially equivalent to, or better than, those employees who were retained, not that plaintiff was performing below the employer's expectations at the time of termination. *See Engler v. Harris Corp.*, GLR-11-3597, 2014 WL 1370320, at *4-5 (D. Md. Apr. 7, 2014), *aff'd*, 628 F. App'x 165 (4th Cir. 2015). Microbiologics does not actually address the third element, despite arguing that plaintiff has not adequately pleaded it. *See* ECF 5-1.

Plaintiff has pleaded that in August 2019 she was the highest ranked area sales manager. ECF 1, ¶ 17.  As of August 2019, plaintiff ranked higher than Iacono and Anderson, the two individuals who assumed her sales territory. ECF 1, ¶¶ 38, 39. In my view, plaintiff has adequately

pleaded facts supporting a claim that her performance equaled or exceeded that of Iacono and Anderson. *See Trigiani v. New Peoples Bank, Inc.*, 599 F.Supp.3d 372, 380-82 (W.D. Va. 2022).

Microbiologics avers that Allgaier has not pleaded facts sufficient to satisfy the fourth element. But, it fails to address whether the residual workforce contained persons in an unprotected status who were performing at a level lower than plaintiff. *See* ECF 5-1.

*Smyth-Riding v. Sci. & Eng'g Servs., Inc.*, WDQ-11-0558, 2014 WL 4899573 (D. Md. Sept. 29, 2014), is instructive. The defendant in *Smyth-Riding* claimed that plaintiff's position was not filled after it was eliminated. *Id.* at 10. However, the female plaintiff alleged "that her job duties were transferred to . . . a Caucasian male." *Id.* The court noted that "if it were to adopt the Defendants' narrow interpretation of the fourth element—that [plaintiff] must show that the Defendants filled her position . . . employers would be able to disguise discriminatory animus by eliminating a position and transferring all the plaintiff's responsibilities to another location." *Id.* The same rationale applies here.

Again, Allgaier ranked higher than Iacono and Anderson in the August 2019 performance assessment. ECF 1, ¶¶ 38, 39. Further, Anderson and Iacono are not members of a protected class. *Id.* ¶ 36. Plaintiff also alleges that Microbiologics has a history of terminating female area sales managers. *Id.* ¶¶ 40, 41, 44; *see King v. Marriot Intern, Inc.*, 195 F. Supp. 2d 720, 725 (D. Md. 2002) (denying motion to dismiss sex discrimination discharge claim in RIF context, in part, because plaintiff alleged "that four other female employees were eliminated because of their sex"). In my view, plaintiff has alleged "facts sufficient to raise the inference of a Title VII violation "'above a speculative level.'" *Holloway v. Maryland*, 32 F.4th 293, 299 (4th Cir. 2022) (quoting *Twombly*, 550 U.S. at 555).

**c.**

Plaintiff alleges that she was discriminated against when defendant "failed to offer her an alternate, available position with the company despite one being available." ECF 1, ¶ 45. In a footnote, defendant interprets this allegation as a discrimination claim based on an alleged failure to hire. ECF 5-1 at 7 n. 3 (citing *Davenport v. Children's Guild*, 742 F. Supp. 2d 772, 780 (D. Md. 2010)). In doing so, defendant argues that Allgaier's failure to hire claim should fail, as she does not allege that she applied for an open position. ECF 5-1 at 7 n. 3.

The suit does not contain a claim for failure to hire.  Plaintiff's allegation appears to constitute a fact to buttress her claim that she was terminated because of her gender.

Accordingly, I shall deny the Motion as to Allgaier's sex discrimination claim.

## C.  The MWPCL (Count II)

### 1.  The MWPCL Generally

L.E. § 3-505(a) governs payment to an employee upon termination. It provides, in part: "[E]ach employer shall pay an employee . . . all wages due for work that the employee performed before the termination of employment, on or before the day on which the employee would have been paid the wages if the employment had not been terminated."

The MWPCL provides an employee with the right to bring a civil suit against an employer to recover unpaid wages. *See* L.E. § 3-507.2(a); *Mohiuddin v. Doctors Billing & Management Solutions, Inc.,* 196 Md. App. 439, 446, 9 A.3d 859, 863 (2010). "The MWPCL is a statutory cause of action, the purpose of which is 'to provide a vehicle for employees to collect, and an incentive for employers to pay, back wages.'" *Cunningham v. Feinberg*, 441 Md. 310, 322-23, 107 A.3d 1194, 1202 (2015) (quoting *Battaglia v. Clinical Perfusionists, Inc.*, 338 Md. 352, 364, 658 A.2d 680, 686 (1995)).

Among other things, the MWPCL "protects employees from wrongful withholding of wages upon termination." *Stevenson v. Branch Banking and Trust Corporation, t/a BB&T*, 159 Md. App. 620, 635, 861 A.2d 735, 743 (2004) (citing L.E. § 3-505). The MWPCL does not focus on "the amount of wages payable but rather the duty to pay whatever wages are due on a regular basis and to pay all that is due following termination of the employment." *Friolo v. Frankel*, 373 Md. 501, 513, 819 A.2d 354, 362 (2003).

In particular, under the MWPCL, if an employer fails to pay an employee all wages due on termination of employment, "after 2 weeks have elapsed from the date on which the employer is required to have paid the wages, the employee may bring an action against the employer to recover the unpaid wages." L.E. § 3-507.2(a*); see Baltimore Harbor Charters, Ltd. v. Ayd*, 365 Md. 366, 382-83, 780 A.2d. 303, 312-13 (2001). "[A] claim under the MWPC[L] must be filed within three years and two weeks from the date on which the employer should have paid the wage." *Butler v. VisionAIR, Inc*., 385 F. Supp. 2d 549, 554 (D. Md. 2005).

If "a court finds that an employer withheld the wage of an employee in violation of [the MWPCL] and not as a result of a bona fide dispute, the court may award the employee an amount not exceeding 3 times the wage, and reasonable counsel fees and other costs." L.E. § 3-507.2(b). "The assessment whether a bona fide dispute exists centers on whether the party resisting the claim 'has a good faith basis for doing so, whether there is a legitimate dispute over the validity of the claim or the amount that is owing.'" *Roley v. Nat'l Professional Exchange, Inc.*, 474 F. Supp. 3d 708, 725 (D. Md. 2020) (quoting *Admiral Mortgage v. Cooper*, 357 Md. 533, 543, 745 A.2d 1026, 1031 (2000)), *aff'd*, 860 Fed. App'x 264 (4th Cir. 2021). However, "an employee is not presumptively entitled to enhanced damages, even if the court finds that wages were withheld

without a bona fide dispute." *Peters v. Early Healthcare Giver, Inc.*, 439 Md. 646, 662, 97 A.3d 621, 630 (2014).

"'Wage' means all compensation that is due to an employee for employment." L.E. § 3-501(c)(1). This includes, per the statute, bonuses, commissions, fringe benefits, overtime wages, or "any other remuneration promised for service." L.E. § 3-501(c)(2). Of relevance here, the term "wage" includes commissions; bonuses when they are compensation for services and not a gratuity; and work-related incentive fees. L.E. § 3-501(c)(2); *see Medex v. McCabe,* 372 Md. 28, 35-37, 811 A.2d 297, 302 (2002); *Whiting-Turner v. Fitzpatrick*, 366 Md. 295, 306; 783 A.2d 667, 673 (2001). Microbiologics does not appear to dispute that the commission payment at issue here, if actually owed, falls within the MWPCL's definition of "wage."

An "employer" within the purview of the MWPCL includes "any person who employs an individual in the State or a successor of the person." L.E. § 3-501(b). The term "employ" is defined in L.E. § 3-101(c) as "engag[ing] an individual to work," including "allowing an individual to work" and "instructing an individual to be present at a work site." This definition applies to the MWPCL. *Amaya v. DGS Constr., LLC*, 479 Md. 515, 570, 278 A.3d 1216, 1249 (2022).

The MWPCL does not define "employee." But, in *Ayd*, 365 Md. at 384-85, 780 A.2d at 314, the Maryland Court of Appeals[3] made clear that the MWPCL's provisions extend to executive

---

[3] In Maryland's general election of November 2022, the voters of Maryland approved a constitutional amendment to change the name of the State's highest court, the Maryland Court of Appeals, to the Supreme Court of Maryland.  And, the voters also approved changing the name of the Maryland Court of Special Appeals, the State's intermediate appellate court, to the Appellate Court of Maryland.  These changes went into effect on December 14, 2022.  *See* Press Release, Maryland Courts, Voter-approved constitutional change renames high courts to Supreme and Appellate Court of Maryland (Dec. 14, 2022), https://www.courts.state.md.us/media/news/2022/pr20221214#:~:text=Effective%20immediately%2C%20the%20Court%20of,the%20Appellate%20Court%20of%20Maryland.  However, to avoid confusion, I will refer to the Maryland courts by the names that were in effect when the cited cases were decided.

and professional employees. The court stated: "[I]f the General Assembly had intended to exclude administrative, executive and professional employees from the provisions of §§ 3-505 and [3-507.2], or otherwise limit the application of these provisions to that class of employees, it would have expressly done so.[ ]" *Id.* at 385, 780 A.2d at 314. The court reasoned that the use of the word "employee" in the statute was meant to distinguish independent contractors from the traditional common law concept of master/servant. *Ayd*, 365 Md. at 387-88, 780 A.2d at 315-16.

### 2.   Discussion

Plaintiff alleges that Microbiologics violated the MWPCL when it failed to pay her commissions on approximately $100,000 in orders, ECF 1, ¶¶ 43, 48, 49, as she had "done everything required" to earn the commissions. *Id.* ¶ 49. Defendant argues that plaintiff makes only conclusory statements in support of this claim. ECF 5-1 at 8-9. Plaintiff counters that even if some of the allegations are conclusory, "the surrounding allegations support the allegation that Plaintiff was entitled to the commissions for the sales as they were earned prior to termination for sales completed but simply not yet delivered by Defendant." ECF 8 at 15. In the Reply, defendant contends: "What is missing from Plaintiff's bare bones allegations are any facts that would define the terms of [her] employment or whether those terms were satisfied such that she possessed a vested right to commissions." ECF 9 at 9 (quotation and citation omitted).

Both parties rely on *Hausfeld v. Love Funding Corp.*, 131 F. Supp. 3d 443 (D. Md. 2015) to support their arguments. *See* ECF 5-1 at 8; ECF 8 at 15; ECF 9 at 9. Like Allgaier, the plaintiff in *Hausfeld* claimed that he was  "entitled to commissions for the work performed prior to his termination." *Id.* In *Hausfeld,* Judge Chuang discussed the relevant inquiry in such a case, *id.* at 458-59 (cleaned up):

> The key question relating to the claimed commissions is whether Hausfeld performed the work necessary to earn them prior to his termination. "[A]n

employee's right to payment vests when the employee does everything required to earn the wages." *Medex*, 372 Md. at 41, 811 A.2d at 305. at 305; *see Hoffeld v. Shepherd Elec. Co.,* 176 Md.App. 183, 932 A.2d at 1197, 1207 (Md.Ct.Spec.App.2007) (holding that the MWPCL affords relief only when the employee has performed all the work necessary to earn the compensation before termination). "Whether an employee has earned a commission depends on the terms of employment." *Hoffeld*, 932 A.2d at 1207 (citation omitted).

Plaintiff alleges that she was "entitled" to, ECF 1, ¶ 20, and "earned," *id.*¶ 49, commissions that Microbiologics failed to pay her.  However, plaintiff does not allege any facts indicating that Microbiologics promised such a payment. *See Martignetti v. International Business Machines Corp.*, 855 Fed.Appx. 857, 860 (4th Cir. 2021) ("For a commission to count as a 'wage,' however, 'the employee must have been promised the particular form of compensation as remuneration for his labor.'"") (quoting *Varghese v. Honeywell Int'l, Inc.*, 424 F.3d 411, 418 (4th Cir. 2005).

Although plaintiff contends that she did "everything required of her to earn the commissions," ECF 1, ¶ 49, she does not allege, with even a modicum of particularity, the basis for a claim of entitlement to commissions.  For example, plaintiff does not allege that, pursuant to an employment contract, she was entitled to commissions.  Nor does she allege an oral or written agreement that supports the claim that she was entitled to commissions after her departure from the Company. *See, e.g., Moon v. Veritas Technologies, LLC,* GJH-21-2750, 2022 WL 3348103, at * 4-5 (D. Md. Aug. 12, 2022); *Macsherry v. Sparrows Point, LLC*, ELH-15-22, 2017 WL 3315262, at *30-33 (D. Md. Aug. 3, 2017).

This Court is "mindful of the fact that, at this early stage in the litigation, a plaintiff will not come to court fully armed with the requisite facts to prove their case." *Langford v. Joyner*, 62 F.4th 122, 126 (4th Cir. 2023). And, "[t]he Court takes the facts as alleged in the Complaint as true and construes the record most favorably to [Allgaier]." *Ndiaye v. Target Corp.*, PX-22-133, 2022 WL 1451647, at *1 n. 1 (D. Md. May 9, 2022) (citations omitted). Nonetheless, Allgaier's MWPCL claim is devoid of facts sufficient to state a claim upon which relief can be granted.  *See*

*Deras v. Verizon Maryland, Inc*., DKC-09-0791, 2010 WL 3038812, at *8 (D. Md. July 30, 2010).

Accordingly, I shall grant the Motion as to Count II, without prejudice, and with leave to amend.

### IV.  Conclusion

For the reasons stated above, I shall deny the Motion at to Count I. However, I shall grant the Motion as to Count II, without prejudice, and with leave to amend.

An Order follows, consistent with this Memorandum Opinion.

Date:   April 7, 2023                                        /s/
                                                    Ellen L. Hollander
                                                    United States District Judge

28